## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **VICTOR HERNANDEZ,** | ) | **CASE NO. 4:09CV3022** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **ROBERT HOUSTON,** | ) | |
| | ) | |
| **Respondent.** | ) | |

This matter is before the court on Petitioner Victor Hernandez's ("Hernandez") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondent filed an Answer (Filing No. 12), Brief in support of his Answer (Filing No. 6), and State Court Records (Filing Nos. 13, 14, and 28). Hernandez filed a Brief on the merits of his Petition (Filing No. 25) and an Affidavit (Filing No. 26). This matter is therefore deemed fully submitted.

Liberally construing the allegations of the Petition, Hernandez states that he is entitled to a writ of habeas corpus because:

Claim One: Petitioner's statement to police violated his Fifth Amendment privilege against self-incrimination because the police interrogation officer did not "properly and clearly advis[e] Petitioner that courts in this country 'will appoint' an attorney for an indigent defendant" ("Claim One").

Claim Two: Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because (A) Petitioner's trial counsel did not require the State to re-arraign Petitioner after the State amended the Information to include the allegation that he "aided and abetted the direct perpetrator to commit felony murder;" and (B) he did not advise Petitioner that he could be convicted of aiding and abetting even though "he was not charged under that theory of culpability in the State's Information against him" ("Claim Two").

Claim Three: Petitioner's conviction was obtained in violation of the due process clause of the Fourteenth Amendment because the jury used an "unconstitutional general verdict form" to convict him ("Claim Three").

Claim Four:       Petitioner's conviction was obtained in violation of the Sixth Amendment's guaranty of an accused's right to a speedy trial ("Claim Four").

Claim Five:       Petitioner was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments because Petitioner's appellate counsel did not effectively challenge trial counsel's failure to advise Petitioner "that he could be convicted under the theory of aiding and abetting" ("Claim Five").

(Filing No. 8 at CM/ECF pp. 1-2.)[1]

## BACKGROUND

### I.   Hernandez's Conviction and Direct Appeal

On September 12, 2003, a jury found Hernandez guilty of one count of first degree murder and one count of use of a deadly weapon to commit a felony.  (Filing No. 13-8, Attach. 7, at CM/ECF p. 77.)  Hernandez was thereafter sentenced to life imprisonment on the first degree murder conviction and 10-20 years on the use of a deadly weapon conviction.  (*Id.* at CM/ECF p. 78.)  Hernandez filed a timely appeal.  Liberally construed, Hernandez raised Claim One and Claim Two, Part A on direct appeal.  The Nebraska Supreme Court affirmed his conviction and sentence on December 10, 2004.  *State v. Hernandez, 689 N.W.2d 579 (Neb. 2004)*.   Where necessary, further details of the Nebraska Supreme Court's opinion are set forth below.

---

[1]Also pending before the court is Hernandez's Motion to Amend.  (Filing No.  27.) It is unclear what relief Hernandez seeks in this Motion.  As best as the court can tell, Hernandez wishes to have the court address his claims as set forth in his Brief on the merits of his Petition.  (Filing No. 25.)  The court has done so in this Memorandum and Order, giving each claim the broadest possible construction.  To the extent the Motion seeks any other relief, it is denied.

## II.     Hernandez's First Post Conviction Motion and Appeal

On December 2, 2005, Hernandez filed a verified motion for post conviction relief ("First Post Conviction Motion").  (Filing No. 13-9, Attach. 8, at CM/ECF pp 6-13.)  The Douglas County, Nebraska District Court denied relief on the First Post Conviction Motion, and Hernandez filed a timely appeal.  Liberally construed, Hernandez raised Claim One, Claim Two (Part A), and Claim Five in his First Post Conviction Motion and appeal.  The Nebraska Supreme Court affirmed the denial of post-conviction relief on April 16, 2008.  (*Id.* at CM/ECF pp. 25-28; Filing No. 13-2, Attach. 1, at CM/ECF pp. 12-22.)  Again, where necessary, further details of the Nebraska Supreme Court's opinion denying post-conviction relief are set forth below.

## III.     Hernandez's Second Post Conviction Motion and Appeal

On January 5, 2009, Hernandez filed a second or successive verified motion to set aside convictions ("Second Post Conviction Motion").  (Filing No. 14-3, Attach. 2, at CM/ECF pp. 39-50.)  The Douglas County District Court denied relief on the Second Post Conviction Motion because Hernandez's claims were procedurally barred.  (*Id.* at CM/ECF pp. 66-71.)  In particular, the Douglas County District Count found that Hernandez could have raised his claims in either his direct appeal or in his First Post Conviction Motion.  (*Id.*)  Hernandez filed a timely appeal, and the Nebraska Supreme Court summarily affirmed the Douglas County District Court's denial of relief on September 9, 2009.  (Filing No. 28-1, Attach. 1, at CM/ECF p. 1.)

Hernandez filed his Petition for Writ of Habeas Corpus ("Petition") in this court on February 4, 2009.  (Filing No. 1.)  Respondent thereafter filed his Answer (Filing No. 12) and Brief in Support (Filing No. 16), arguing that Hernandez's claims are either

3

procedurally defaulted, or that the state court reasonably applied federal law and therefore no federal habeas corpus relief is available. Hernandez argues the merits of his claims, and also argues that his claims are not procedurally defaulted. (Filing Nos. 25 and 26.)

### ANALYSIS

**I.    Procedural Default**

    *A.    Standards for Exhaustion/Procedural Default*

As set forth in 28 U.S.C. § 2254(b)(1):

(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

        (A)    the applicant has exhausted the remedies available in the courts of the State; or

        (B)    (I)    there is an absence of available State corrective process; or
            (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1)

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A state prisoner must therefore "fairly present" the substance of each federal constitutional claim to the state courts *before* seeking federal habeas relief. *Id.* at 844. In Nebraska, "one complete round" ordinarily

means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

In addition, "fair presentation" of a habeas claim in state court means that a petitioner "must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (quotation omitted). Thus, where a petitioner argued in the state courts only that "the trial court misapplied . . . state statutes and case law," the claim is procedurally defaulted. *Id.*; *see also Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (finding claim was procedurally barred where the petitioner failed to raise his federal due process claim and "cited no federal authority" in the state courts).

Moreover, where "no state court remedy is available for the unexhausted claim-that is, if resort to the state courts would be futile-then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). Stated another way, if a claim has not been presented to the Nebraska appellate courts and is now barred from presentation, the claim is procedurally defaulted, not unexhausted. *Akins*, 410 F.3d at 456 n. 1.

5

Under Nebraska law, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). In such circumstances, where a Nebraska state court rejects a claim on state procedural grounds, and "issues a plain statement that it is rejecting petitioner's federal claim on state procedural grounds," a federal habeas court is precluded from "reaching the merits of the claim." *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989); *see also Greer v. Minnesota*, 493 F.3d 952, 957 (8th Cir. 2007) (reiterating that "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement," federal habeas is barred because "[i]n such instances, the state prisoner forfeits his right to present his federal claim through a federal habeas corpus petition") (quotations omitted). However, the state court procedural decision must "rest[] on independent and adequate state procedural grounds." *Barnett v. Roper*, 541 F.3d 804, 808 (8th Cir. 2008) (quotation omitted). "A state procedural rule is adequate only if it is a firmly established and regularly followed state practice." *Id.* (quotation omitted). Even where a claim has been procedurally defaulted, a petitioner is entitled to an opportunity to demonstrate cause and prejudice to excuse the default. *Akins*, 410 F.3d at 456 n. 1.

B.   *Hernandez's Claims*

Except for Claim One, Claim Two, Part A, and Claim Five, addressed below, Hernandez failed to properly raise any of his Claims in the Nebraska state courts.

6

Regarding Claim Two, Part B, Hernandez arguably raised this claim for the first time in his First Post Conviction Motion. However, Hernandez had different counsel at trial and on direct appeal. (Filing No. 13-2, Attach. 1, at CM/ECF p. 13.) As such, any ineffective assistance of trial counsel claims must have been raised in his direct appeal. Specifically, the Nebraska Supreme Court concluded that because this claim was not "properly raised on direct appeal," it was "procedurally barred on postconviction review." (*Id.* at CM/ECF pp. 16-17.)

Similarly, Hernandez did not raise Claim Three in his direct appeal or First Post Conviction Motion. Although Hernandez arguably raised Claim Three in his Second Post Conviction Motion, the Douglas County District Court determined that it was procedurally defaulted because Hernandez failed to raise that claim on direct appeal and that Hernandez failed to show any reason for his failure to raise it earlier. (Filing No. 14-3, Attach. 2, at CM/ECF pp. 67-69.) In light of the Nebraska state courts' "plain statement[s]" that they were rejecting Hernandez's federal claims on independent and adequate state procedural grounds, Claim Two, Part B and Claim Three are procedurally defaulted. *Shaddy,* 890 F.2d at 1018.

Hernandez never presented Claim Four to a Nebraska state court. He is now barred from doing so because he cannot submit a third motion for post conviction relief where, as here, the basis for relief was clearly available at the time of his direct appeal and First Post Conviction Motion. *See Ortiz,* 670 N.W.2d at 792. Hernandez had three opportunities to raise Claim Four in the state courts, but chose not to do so. Claim Four is therefore exhausted by procedural default. Because they are procedurally defaulted, the court

cannot resolve Claims Two, Part B, Three, and Four unless Hernandez demonstrates cause and prejudice.

### C.    Cause and Prejudice

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Although there is no precise definition of what constitutes cause and prejudice, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999); *see also Bell v. Attorney Gen. of the State of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) ("A cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner.").

The court has carefully reviewed Hernandez's submissions in this matter and finds that Hernandez does not argue cause and prejudice which would excuse his procedural default.  Rather, Hernandez claims that he argued "plain error" in the state court, and his claims are therefore "not subject to procedural default under Nebraska Law."  (Filing No. 25 at CM/ECF p. 11.)  Hernandez is apparently confused about the effect of a "plain error" argument on procedurally defaulted claims.  It is true that, where a state court conducts a "plain error" review of a defaulted claim, such a review *may* "cure[] a procedural default." *Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009) (noting, but not resolving, the "unfortunate" and "surprisingly persistent" split of authority within the Eighth Circuit

8

regarding this issue). However, it is not a petitioner's "plain error" *argument* which may cure a procedural default, but a state court's "plain error" *review* which may do so.

Thus, even assuming that a plain error review cures a procedural default, that argument has no effect here because the Nebraska courts did not conduct a "plain error" review. As set forth above, the Douglas County District Court dismissed Hernandez's Claim Two, Part B and Claim Three as procedurally barred. (Filing No. 28-5, Attach. 4 at CM/ECF pp. 29-32.) That court specifically addressed Hernandez's "plain error" argument by stating, "Defendant's attempt to avoid this procedural bar by rephrasing these issues as "plain error" is without merit." (*Id.* at CM/ECF p. 31.) No state court conducted a "plain error" review of Hernandez's defaulted claims, and there is simply nothing for this court to review. Moreover, this court "may not simply conduct [its] own plain error review de novo." *Shelton, 563 F.3d at 408*. In short, Hernandez's "plain error" argument lacks merit. Further, he has not submitted any argument or evidence which shows that he, or his counsel, were objectively impeded from filing Claims Two, Part B, Three, and Four in his direct appeal or in his First Post Conviction Motion.[2] Because Hernandez has not demonstrated cause and prejudice to excuse his procedural default, Claims Two, Part B, Three, and Four are dismissed.

---

[2]Hernandez does not argue that he is entitled to relief despite his procedural default based on a "fundamental miscarriage of justice" or because he is actually innocent. Regardless, the court has independently reviewed the record in this matter and finds that the record does not support such claims.

**II.    Remaining Claims**

　　A.    *Standard of Review*

　　When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law.  *See* 28 U.S.C. § 2254(d).  With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

　　Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399.  Importantly, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable."  *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).  This high degree of deference only applies where a claim has

10

been adjudicated on the merits by the state court.  *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim.  The claim must have been 'adjudicated on the merits' in state court.").

      B.    *The* Strickland *Standard*

In addition to the general standard of review set forth above, a claim of ineffective assistance of counsel is reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984).  *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense.  *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the *Strickland* test requires the petitioner to demonstrate that his attorney failed to provide reasonably effective assistance.  *Strickland*, 466 U.S. at 687-88.  In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002).  A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test.  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir.

1988)).  Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action.  466 U.S. at 689.

Additionally, the Supreme Court recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims.  *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-20 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and that "leeway" presents a "substantially higher threshold" for a federal habeas petitioner to overcome.  Thus:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro, supra, at 473*, 127 S. Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Id.* at 1420.

C.    State Court Findings–Claim One

For his Claim One, Hernandez argues that he is entitled to habeas corpus relief

because he was not adequately informed of his *Miranda* rights under the Fifth Amendment

prior to making a confession.  (Filing No. 1 at CM/ECF p. 6.)  More specifically, Hernandez

asserts that the Spanish translation of his *Miranda* rights informed him that a court "could,

may, or can" appoint a lawyer to assist him if he is indigent, not that a court "will appoint"

a lawyer.  (*Id.*)  Hernandez raised this claim in his direct appeal and it is fully exhausted in

the Nebraska state courts.  Indeed, the Nebraska Supreme Court rejected Claim One,

finding that Hernandez's argument regarding deficient *Miranda* warnings were "without

merit."  *State v. Hernandez*, 689 N.W.2d 579, 587 (Neb. 2004).  In doing so, the Nebraska

Supreme Court referred to and incorporated its decision on this identical issue raised on

direct appeal by Hernandez's co-defendant, Luis Fernando-Granados.  *Id.* (citing *State v.*

*Fernando-Granados*, 682 N.W.2d 266 (Neb. 2004) (affirming convictions and sentences

of Petitioner's co-defendant)).  As set forth by the Nebraska Supreme Court in *Fernando-*

*Granados*:

> Considering in their totality the advisements given in this case,
> Fernando-Granados was clearly advised of his right to remain silent, the
> consequences of forgoing that right, and his right to have an attorney present
> during questioning.  The challenged warning, while not a verbatim Spanish
> translation of the language used in *Miranda*, was sufficient to accomplish
> what the U.S. Supreme Court stated as its purpose, namely, to prevent a
> misunderstanding that the right to consult a lawyer is conditioned upon
> having the funds to obtain one.  See *Miranda v. Arizona*, 384 U.S. 436, 86
> S. Ct. 1602, 16 L. Ed.2d 694 (1966).  Fernando-Granados was effectively
> advised that if he wanted a lawyer and could not afford one, he could request
> appointed counsel and that the court had the authority to grant his request.
> Although the phrase "will appoint" was not used, the advisement was
> nevertheless sufficient to reasonably inform him of his right to an attorney,
> and to apprise him that a method, i.e., appointment by the court, existed for

13

ensuring that an attorney was available to him.  Considered in their entirety, the warnings given to Fernando-Granados do not imply that the court had discretion to deny a request for appointment of counsel.  After the prosecution had demonstrated "the use of procedural safeguards effective to secure the privilege against self-incrimination," see *Miranda*, 384 U.S. at 444, 86 S. Ct. 1602, as a matter of law, the district court did not err in denying the motion to suppress the statements given by Fernando-Granados while in custody.

*Fernando-Granados*, 682 N.W.2d at 279-80.  Again, the Nebraska Supreme Court relied on this reasoning in rejecting Hernandez's Claim One in its entirety.  *Hernandez*, 689 N.W.2d at 587.

### D.    State Court Findings–Claim Two, Part A and Claim Five

For his Claim Two, Part A, Hernandez argues that his trial counsel was ineffective for failing to require the State to re-arraign him after amending the information to include a specific reference to "aiding and abetting."  (Filing No. 1 at CM/ECF pp. 7-8.)  For his Claim Five, Hernandez argues that his appellate counsel was ineffective for failing to adequately raise Claim Two, Part A on direct appeal.  (*Id.* at CM/ECF p. 9.)  Reading Hernandez's claims "broadly," the Nebraska Supreme Court analyzed the re-arraignment issue in its detailed opinion denying relief on the First Post Conviction Motion.  (Filing No. 13-2, Attach. 1, at CM/ECF pp. 17-20.)  The court found that:

Neither prong of the *Strickland* test is established in this case.  We held in *State v. Contreras* that it is proper for a district court to give an aiding and abetting instruction where warranted by the evidence, notwithstanding the fact that the document charging the defendant does not include aiding and abetting language.  We reached this conclusion because Neb. Rev. Stat. § 28-206 (Reissue 1995) does not define a separate crime, but instead abrogates the common-law distinction between the prosecution of a defendant as an aider and abettor as distinguished from a principal offender.  Thus, an information charging a defendant with a specific crime gives the defendant adequate notice that he or she may be prosecuted for the crime

14

> specified or as having aided and abetted the commission of the crime
> specified.  Hernandez's trial counsel could not have performed deficiently by
> not requesting relief inconsistent with our holding in *Contreras*, and appellate
> counsel therefore could not have performed deficiently in declining to raise
> this issue on appeal.

*Id.* at CM/ECF pp. 19-20.  In addition, the Nebraska Supreme Court determined that Hernandez failed to show prejudice because "[e]ven if he had been rearraigned on the amended charge, Hernandez would have been tried for first degree murder," and "[t]here is nothing in the record to suggest that rearraignment would have achieved a different result." (*Id.* at CM/ECF p. 20.)  The Nebraska Supreme Court also rejected Hernandez's claim that, had he been rearraigned, he would have "pursued a plea agreement," because the record did not show that "such an agreement was ever offered or even considered by the State." (*Id.*)

E.    Deference

Respondent argues that all of the foregoing findings of fact and conclusions of law relating to Hernandez's Fifth Amendment and ineffective assistance of counsel claims are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts.  (Filing No. 16.)  Indeed, as set forth above, this court must grant substantial deference to the Nebraska state court decisions.  The court has carefully reviewed the record in this matter and finds that the Nebraska Supreme Court decisions denying Hernandez's Fifth Amendment and ineffective assistance of counsel claims are not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Regarding the claims decided on the merits by the Nebraska state courts, Hernandez has not submitted any evidence, let alone clear and convincing evidence, that the Nebraska Supreme Court

was incorrect in any of its factual or legal determinations.  28 U.S.C. § 2254(e)(1).  In short, the grant of a writ of habeas corpus is not warranted here because the Nebraska state courts reasonably applied *Strickland* and other Supreme Court holdings in reaching their decision.  In light of these findings, Hernandez's Petition is dismissed in its entirety.

IT IS THEREFORE ORDERED that:

1.    Petitioner Victor Hernandez's Petition for Writ of Habeas Corpus (Filing No. 1) is denied in all respects and this action is dismissed with prejudice;

2.    A separate judgment will be entered in accordance with this Memorandum and Order; and

3.    Petitioner's Motion to Amend Petition (Filing No. 27) is denied.

DATED this 14th day of April, 2010.

BY THE COURT:


s/Laurie Smith Camp
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.